## Kelsey Estate

*Grove & Taxis* and *MacCoy, Evans & Lewis,* for petitioners.

*Brunner & Conver* and *W. Leroy McKinley,* for accountant.

HOLLAND, P. J., April 16, 1951.—The account shows losses on the conversion of securities and the writing

off of worthless securities in the total sum of $73,-304.79, which would be the amount involved and in controversy if the question of surcharge ever got before the court as an issue. The aim of this petitioner in this proceeding is to obtain a review of the adjudication on the first account of the trustee in order to raise this issue on exceptions.

The accented facts in the petition of petitioner (who was in blockaded Berlin during the period under consideration) are contained in the following averment:

"In the fall of 1944 your petitioner, who was then in the United States Army, was ordered to Europe where he has remained except for short visits home in the summer of 1946, March of 1948 and in July of 1950. At the time of the audit of the first account of the trustee, December 6, 1948, your petitioner was an employe of the Department of the Army and was stationed in Berlin, Germany, with the Office of Military Government. A notice of the audit, dated November 17, 1948, was not received by your petitioner until December 5, 1948, one day before the audit. On December 13, 1948, your petitioner acknowledged receipt of the notice and requested that a copy of the account be sent to him. The copy of the account was not received by your petitioner until January 17, 1949. Immediately thereafter, on January 23, 1949, your petitioner made detailed inquiries concerning the investment losses shown in the account. Thereafter there was further correspondence concerning these losses but your petitioner has received no explanation which he considers satisfactory."

The answer of the trustee, Fidelity-Philadelphia Trust Company, raising preliminary objections, suggests two impediments: 1. Notice as required by law and applicable rules of court was given. 2. All other persons who have joined in the petition as copetitioners,

who admittedly received legal notice and could have no possible ground for review but for the institution of this proceeding by petitioner, cannot ride along on his ground for review, if he has any, and participate in a total surcharge if any were obtained. As to this second objection it is sustained and this question will not be considered further. That a person who has no right of action himself cannot use another's right of action as a vehicle to smuggle himself into a position of recovery seems too obvious to need discussion. The court will only consider the first question which is framed in the briefs of petitioner and respondent, respectively, as follows:

"Cannot the court, as a matter of grace, grant a review of an account regardless of whether notice requirements have been technically complied with?"

"Does the posting of an air mail letter nineteen (19) days before an audit constitute adequate notice thereof?"

The relevant Montgomery County Orphans' Court Rules are as follows:

*Section 9, Rule 3.*—"Actual notice of the filing of accounts shall be given by the fiduciary or his attorney, a reasonable time before the audit thereof, to: (1) Persons claiming an interest in the estate as creditor, legatee, next of kin, or otherwise, who have given written notice of their claims to the accountant or his attorney; . . ."

*Section 3, Rule 9.*—"Unless otherwise directed by these rules or by special order, notices shall be given so that at least five full days intervene between the day of hearing or the day fixed for the performance of any act, and the day on which personal service was had, or letter of notice was mailed, or the last publication appeared."

All these local rules are superseded where inconsistent by the Uniform Orphans' Court Rules promul-

gated by the Supreme Court. Of these rules the relevant ones are as follows:

*Section 6: Accounts and Distribution*

*Rule 3. Notice to Parties in Interest*

"No account shall be confirmed unless the accountant has given written notice of the filing of the account and the call thereof for audit or confirmation to every unpaid creditor who has given written notice of his claim to the accountant and to every other person of whom the accountant has notice or knowledge who claims an interest in the estate as beneficiary or next of kin."

*Section 5: Notice*

*Rule 1. Method*

"Except where otherwise provided by a rule adopted by the Supreme Court or by an Act of Assembly, whenever notice is to be given a person, it shall be given . . . (b) if there is no such attorney, by personal service, delivery at the residence of such person or by mail, if his residence is known."

*Rule 3. Time for Notice*

"Whenever notice of the intention to do any act is required, such notice shall be given at least ten days prior to the doing of the act, unless a different period is specified by a rule adopted by the Supreme Court or by an Act of Assembly."

The trustee who was the accountant, complied with the strict requirement of giving notice. Petitioner's residence was known but obviously personal notice could not be given him. The alternative allowed by section 5, rule 1, was resorted to by giving him written notice by mail. It was given in due time as required by section 5, rule 3, of the uniform rules. That rule required notice to be given at least 10 days prior to the audit. In fact, it was given 19 days before the audit. Petitioner argues that the giving of the notice should not be counted as the time of mailing but should

be counted as the time he received it, which was one day before December 6, 1948, the audit day. If this were true it would be an exception to every other instance in the law where notice by mail is required or allowed. All legal notices by mail are completed when the notice is put into the United States mail and for obvious reasons. Were it otherwise, the person sending the notice would be held to be a guarantor not only that the addressee received it but that he received it on time. This was never intended in the law.

What principle of justice applies in this situation? It might be defined as a rule of common sense as applied to practical human relations. While it is the duty of the sender of the notice to use all reasonable means to see that the addressee gets it, it cannot be said that the addressee is free of all responsibility to make himself reasonably available. He must be expected to be aware of his interests, their extent, and their location and, if he contemplates going to a place or entering upon travels that he must know will render him inaccessible to communication, it is not unreasonable to place upon him the responsibility of leaving his affairs in charge of some responsible agent or attorney-in-fact of his choice who would be readily accessible to notice of proceedings affecting his interests. Even less consideration is due one who negligently becomes a wanderer or drifter. Were this not the law, a premium would be put on negligence, sloth, and dilatoriness, while thrift, alertness, and a sense of responsibility would be put at a discount. Proceedings would be unduly delayed and other parties interested therein, who were diligent would, through no fault of their own, suffer inconvenience, if nothing worse. If, therefore, the sender of the notice by mail, under such circumstances, complies with the rule of court by depositing it in the United States mail in due time, the notice is

good, even if it turns out, as a practical matter, to be valueless to the addressee.

Now this all applies to persons in civilian life who have full control of their own movements and conduct, but an exception should be made where the addressee of the notice is in the armed forces of the United States. In this latter case, there is an element of compulsion that has the potentiality of depriving him of control of his movements and location. It deprives him of plausible prediction of his destination and the calculation of time in preparing for his departure. He may intend to arrange his affairs before leaving but be suddenly called away before accomplishing it.

Under these circumstances the sender of the notice, especially where the sender is a fiduciary sending notice to his cestui que trust, should exercise a greater degree of care and determination to see to it that his cestui que trust in this predicament has every opportunity to understand the status of his interests and defend them.

It is true that this petitioner was not technically in the armed forces. He appears to have been a civilian employe of the Department of the Army, but he was so much in the same predicament as members of the armed forces that the court would deem it captious to make any distinction. He received the notice one day before the audit, knew nothing of the contents of the account, and the notice was utterly worthless to him. Nevertheless, he immediately took such action as was available to him by correspondence with his fiduciary. The court is of the opinion that he did not have his day in court nor any opportunity to get it and he should have it. The property that would be the subject matter of review is still in the possession and control of the fiduciary.

Although the exception to the general rule has been resolved in favor of a person in the armed services in this case, the court expressly disclaims this as a

precedent that the exception will favor every person in the armed services by virtue of that fact alone. Each case of a person in the armed services of the United States should be considered under its own circumstances.

The review will be granted as to the rights and interests of the petitioner exclusively.

And now, April 16, 1951, the adjudication on the first account of Fidelity-Philadelphia Trust Company, the trustee, audited December 6, 1948, and confirmed absolutely December 26, 1948, is opened for the purpose of review, said review to be restricted exclusively and solely to the interests and rights of petitioner, Joseph W. Darling, with reference to the account and the property accounted for.